Thomas May, Appellant, *v.* Syracuse Newspapers, Inc., Respondent.

Third Department, March 3, 1937.

*Joe Schapiro,* for the appellant.

*Hancock, Dorr, Kingsley & Shove* [*Carl E. Dorr* of counsel], for the respondent.

Hill, P. J.   Appellant has recovered a judgment of six cents in this action for libel.   He appeals therefrom and from an order denying his motion to set aside the verdict.   Respondent in its newspaper, the *Syracuse Journal,* on December 9, 1935, published the alleged libel:

" Munnsville woman charges farmer wed her to save wages. Claims cruel treatment by husband.

" Discovering when it was too late, she charges, that it was avarice, not love, that inspired Thomas May, 65, thrifty and prosperous Munnsville farmer, to woo and win her consent to marriage, Mrs. Staffee May, 62, is preparing to defend a separation suit and to prosecute a counter suit with a demand for alimony.

" May, in his action, relates that he married the defendant Feb. 15, 1932, and that he has done his best to provide her with a good home and make her a good husband, but despite these efforts to make her happy, he charges she treated him in a cruel and inhuman manner and deserted him last Oct. 25.

" In her answer, filed through John J. Mahon, Mrs. May admits she married the plaintiff on the date mentioned and that it was a mistake. To the balance of the complaint she sets up a denial, alleging that ever since their marriage May has made life miserable for her.

" Living in Russia, Mrs. May says that 10 years ago her two sons persuaded her to come to the United States, and she lived with them for three or four years.

" May has two large and well stocked farms near those operated by her sons and when his wife died, she says, he employed her as housekeeper at $25 a month. She continued to act in this capacity for several years, and then May proposed marriage professing that he loved her, she says.

" As soon as the wedding knot was tied, she relates that her wages as housekeeper ceased and May, as husband and lord and master of the house, changed his attitude toward her. As his housekeeper, she says May maintained a certain amount of respectfulness toward her, but as her husband, he was cruel, overbearing and tyrannical, working her to the limit of her endurance.

" May could speak very little Russian and she could speak very little English, but she says she could understand when he called her vile names and much of his other language toward her. When she tried to protest, he laughed at her and called her names, she alleged.

" She says she soon became aware that May's only object in marrying her was to save paying her a monthly wage, the board being equal either way. As to clothing, she relates that he provided her with very little. She relates that he always employed several farmhands and in the harvest season she was compelled to cook for and wait on as many as 10 men.

" She charges that May took great delight in humiliating her before the farmhands and, refusing to buy her shoes, made her wear

rubber boots when she went out of doors, while the men stood about and jibed and laughed at her.

"Mrs. May says her husband enlisted the aid of his employees in torturing her, directing them to scare her and to engage in conversations in which they plotted ways of killing her. One plot recited for her benefit was to bind her hand and foot, gag her, throw her into an open grave, pour gasoline over her and burn her to death, she charges. A knife with a saw on the back of its long blade, with which Mrs. May says her husband threatened to disembowel her, will be the chief exhibit at the trial."

Under the charge of the court, it was left to the jury to determine whether the article was a "fair and true report" of the separation action mentioned which was a pending judicial proceeding (Civ. Prac. Act, § 337), and the jurors were told that if they found it to be a fair and true report, the plaintiff was not entitled to a verdict. The chronology of the separation action follows: The summons and the complaint were served on the defendant on October 21, 1935. The answer and notice of motion for counsel fees and alimony, together with the affidavit in support of the motion, were mailed by the defendant's counsel to the plaintiff's counsel on December twenty-ninth. The answer, which is an exhibit in the case, appears to have been verified on November nineteenth. The notice of motion is dated December twenty-third, and the affidavit in support of the motion was verified on December fourth. Respondent's reporter testified that the attorney for the defendant in the separation action permitted him to examine the private file of papers, and that he also talked with the attorney in regard to the matter.

*Campbell* v. *New York Evening Post* (245 N. Y. 320) is a recent authority in the Court of Appeals concerning publications which come under the protection of the Civil Practice Act (§ 337). Earlier decisions in this and other States and in England had enunciated a rule that the "privilege does not apply to pleadings which, though filed, have not yet received judicial notice." Judge POUND stated in the *Campbell* opinion, after a prefatory discussion of the earlier decisions and the paradoxical results obtained thereunder, "We may as well disregard the overwhelming weight of authority elsewhere and start with a rule of our own, consistent with practical experience. * * * Therefore, we proceed to a logical conclusion and uphold the claim of privilege on the ground that the filing of a pleading is a public and official act in the course of judicial proceedings." The opinion, after stating this liberalization of the rule, admonishes, "the privilege thus extended must be kept strictly within proper bounds [citation] and not extended beyond the limits of the statute."

There is no evidence as to the date when the answer was filed, but the respondent argues that the service thereof made it a public document and permitted privileged comment thereon the same as if it had been filed. Should we extend the rule of the *Campbell* case and determine that service of a pleading gives the same right of comment as though it had been filed, yet this article was not privileged as it was published twenty days before the answer was served.

Upon the question of privilege, the language of the charge permitted the jury to consider the visit of the reporter to the office of the attorney for the defendant, the conversations had there and the information obtained from an examination of the papers in the attorney's private files. Comment upon the information thus gained was not privileged. In *Sanford* v. *Bennett* (24 N. Y. 20), which has recently been cited with approval by the Court of Appeals, particular stress is laid upon that portion of the section (337) which provides that privilege does not extend to " the report of any thing said or done at the time and place of the public and official proceedings which was not a part thereof." The libel involved in the *Sanford* case was the publication of a speech made by a convicted murderer from the scaffold, immediately prior to his execution. It was there determined that while " the execution of a capital sentence upon a convict is no doubt a public proceeding of a very solemn and impressive character," the speeches of the participants and even the prayers of the divine were not a necessary part thereof and their publication not privileged. If these utterances were not a necessary part of such a proceeding, conversations in private between the attorney for one party and a reporter are not.

It was for the court to determine as matter of law whether this answer and affidavit had become a part of the pending judicial proceeding so that comment thereon was privileged. Had the court decided in the affirmative, then it would have been proper for the jury to determine whether the article was a " fair and true report." Neither the answer nor the affidavit was a part of the judicial proceeding, and as the alleged libelous part of the article is a comment on these documents, it was not privileged and nothing on that issue should have been submitted to the jury. The fact that the answer became a public document subsequent to the publication is without significance, for the statutory privilege does not protect a newspaper when it states anticipated events to be facts. (*Schäffran* v. *Press Publishing Co.*, 258 N. Y. 207.) While the jury, having given a nominal verdict, must have found that some portion of the article was not privileged, the charge

permitted a finding that much of it was privileged. Thus the error was prejudicial.

The judgment should be reversed on the law and facts and a new trial granted, with costs of this appeal to the appellant.

McNAMEE, CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Judgment and order reversed on the law and facts, and new trial granted, with costs of this appeal to the appellant.