**STEVENSON**

v.

**HEARST CONSOL. PUBLICA-
TIONS, Inc.**

No. 147, Docket 22916.

United States Court of Appeals,
Second Circuit.

Argued Jan. 15, 1954.

Decided July 27, 1954.

McCauley & Henry, New York City
(Charles Henry, New York City, of counsel), for defendant-appellant.

George G. Hunter, Jr., New York City
(Frank H. Gordon and James T. Gallagher, New York City, of counsel), for plaintiff-appellee.

Before FRANK, MEDINA and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

The jurisdiction of the court below is based on diversity of citizenship, the appellee (whom we shall occasionally designate as the plaintiff) being a citizen of the State of New York and the appellant (defendant below) a Delaware corporation which publishes in the City of New York a newspaper, the "New York Journal-American."

The libel complained of was published in the following circumstances. The plaintiff's wife, from whom he was estranged, had served, but not yet filed, a separation suit against him in the New York Supreme Court. Thereafter she filed in the New York Supreme Court a motion for temporary alimony, hearing on which had been adjourned until August 13, 1948, at which time on order of court it was permitted to be withdrawn. On that day the defendant's reporter, Cohen, went to the anteroom of the Courtroom in which Justice Greenberg had heard the morning's motion calendar. Seeing upwards of twenty files on the table he asked permission of Justice Greenberg to look at them, without mention of matrimonial files in general or the Stevenson file in particular. To this the Justice replied, "Well, go right ahead," whereupon the reporter without further formality examined the Stevenson file including Mrs. Stevenson's supporting affidavit wherein she charged the plaintiff, in intimate detail, with inexcusable neglect of herself, as his wife, as well as with unconventional association with other women. Some five days later the reporter, who knew throughout that the motion for alimony had been withdrawn, provided the defendant with a story which purported to be a resumé of the charges contained in the wife's affidavit. This story which was published in the New York Journal-American on August 19, 1948, is the publication here complained of.

The appellant in its amended answer to the complaint pleaded as "partial defenses" a "fair and true" news report and a belief reasonably induced by communications from reliable sources that its publication was true. By pre-trial order, the issues to be tried were limited to the issue of damages thus in effect eliminating privilege as a defense in bar. No error is predicated on that order on this appeal. Indeed, the appellant on its brief on appeal concedes that the publication was not privileged, doubtless impelled to that concession, as indeed its brief shows, by the impact of Stevenson v. News Syndicate Co., 302 N.Y. 81, 96 N.E.2d 187.

The story as published made no mention of the withdrawal of the motion; it incorrectly spoke of the charges therein as made "today" clearly implying that the motion was still pending. In sensationalized language, it unmistakably implied that the plaintiff was living in an illicit relationship with one of his office secretaries whom it named, although the wife's affidavit went no farther than to charge marital neglect and indiscreet and unconventional association with the woman named and others. The published story, because of this and other variations from the affidavit which it purported to report, was not privileged as a fair and true report of news: it was so held in Stevenson v. News Syndicate Co., supra, and we should so hold here if error had been predicated on the order below which eliminated privilege as a defense.

The appellant now contends that the amended complaint is so lacking in specificity that there is no adequate support for the jury's finding of special damages in the amount of $24,000. F.R.C.P. 9 (g), 28 U.S.C.A., requires that items of special damages when claimed "shall be specifically stated." The amended complaint alleged that as a direct result of the publication the plaintiff's employer, a nation-wide corporation of which the plaintiff was the treasurer at an annual salary of $19,000, in October, 1948, compelled his resignation so that he thereby lost his position with its concomitant salary, except for one year's salary allowed him on separation, and that, despite diligent effort, the plaintiff thereafter was unable to obtain a higher sal-

ary that $10,000. It alleged further that as an incident of his involuntary resignation the plaintiff, then aged 42, lost an annual pension of $9,671 (with possible increment in the event of a subsequent increase in salary) to which he would have been entitled if he had retained his position until 65 years of age. $300,000 in special damages were claimed.

As pointed out in Moore's Federal Practice (2d Ed.) Sec. 9.08, when it comes to pleading special damages there is a distinction between cases in which special damage is essential to the cause of action and cases in which a cause of action exists irrespective of special damage. The cases cited by appellant all fall into the former category. Here we have to do with a publication which, since not privileged as a fair news report, was libelous *per se* under the applicable law of New York. Stevenson v. News Syndicate Co., 302 N.Y. 81, 96 N.E.2d 187. See Seelman on Libel and Slander, Sec. 372. This being so, an allegation of special damage, under the law of New York, was not essential to make out a cause of action. A valid cause of action having been stated, we hold that the complaint sufficiently stated special damages within the requirements of Rule 9(g) which governs pleadings in the federal courts.

The appellant urges further that there was insufficient evidence to prove that the plaintiff's loss of employment was proximately caused by the publication complained of. In support of its position on this claim of error the appellant points to considerable evidence which, if considered alone would have supported a finding that the plaintiff's discharge was the consequence not of the published defamation but of the breach by the plaintiff of a "promise" given prior to the publication to his superior corporate officer to discontinue his association with the woman named. But the corporate officer (Gibson) to whom alone this promise was allegedly made failed to testify unequivocally to its existence.

He said only that some six months before the publication he had "asked him to cease going with the girl" and was left with "the impression that he would not see" her again, etc., and definitely denied that the plaintiff had made any "pledge or * * * promise" not to see her. Another, the chief corporate officer, Francis, testified that Gibson had indicated to him that "in his (Gibson's) judgment" the plaintiff had broken a promise and that in direct conversation with the plaintiff after the publication, the plaintiff had admitted the promise but denied that he had violated it since he had done nothing wrong. The plaintiff, himself, on the trial, denied that he had made such a promise, testifying that he had indicated only an intent to discuss the subject-matter of their relationship with the woman involved. On such evidence the jury surely was not constrained to find a broken promise by the plaintiff.

But whether or not such a promise had ever been made, there was abundant evidence from which the jury could properly find that the plaintiff's discharge was a foreseeable consequence of the defamation. Cf. Prosser on Torts, page 809. The minutes of the meeting of the corporate executive committee which accomplished the discharge contained a recital by the corporate chairman that "after careful review of the facts it was clear that there was no question whatever about Mr. Stevenson's technical competence and that his affairs with the company were in perfect order." On trial, the corporate chairman testified to a discussion with the executive vice-president as to whether the plaintiff's *reputation* had been impaired enough by this publicity to take any action." [1] On August 28, 1948, at a meeting of the executive committee a print of the publication was read at least in part and thereupon the plaintiff was given leave of absence for three months. The corporate chairman testified that plaintiff's *reputation* in New York had been hurt at least amongst corporate personnel in New

1. Here, as elsewhere in this opinion, the emphasis put upon quotations is supplied.

York. The employer-corporation, itself, after plaintiff's discharge, offered him employment outside of New York and top executives were cooperative in his efforts to find other employment.

The effect of this evidence which strongly supported the finding is weakened little, if at all, by evidence that the plaintiff's private life was the sole cause of his discharge. True, there was evidence of belief that "his personal conduct had been such that he had lost the respect of the organization generally." But we find no evidence at all that this loss of respect existed prior to the publication. It is at least implicit in the evidence that the plaintiff's conduct, in view of his marital status, had been indiscreet long before the publication. But not until the publication occurred charging something more serious than unconventional conduct did the company take action to his hurt. Whether the corporate officers themselves believed the defamatory imputations of the publication is immaterial if—as they testify—they took action because of plaintiff's resulting loss of repute in the eyes of the personnel generally.

 The appellant further predicates numerous claims of error upon rulings on the evidence. It attacks particularly the ruling excluding the complaint in the separation suit contending that it was admissible as matter "tending but failing to prove the truth" of the published charge and hence available to it "not in mitigation but reduction of damage." We hold, however, that the ruling was proper. The complaint, though pending, had never been filed and hence was not subject-matter of a privileged news report. May v. Syracuse Newspapers, 250 App.Div. 155, 294 N.Y.S. 867. Of course, the complaint was inadmissible as hearsay to prove the truth of its contents. And we cannot perceive how proof only of unfiled and unpublished *charges* made by the plaintiff's wife, which the appellant was not privileged to publish, could have had any bearing on malice or on any other open issue or a rational tendency either to mitigate or reduce the damages resulting from what the appellant did wrongfully publish. The case is not one in which the plaintiff ascribed deterioration in his matrimonial relations to the publication.

 The appellant also criticizes rulings admitting the testimony of an actuary as to the present worth of sums representing, respectively, (a) the difference between the salary which the plaintiff would have received from his employer if he had remained in its employ at the same salary until 65 years of age, and the reduced salary (plus bonus) which the plaintiff was receiving from his new employer if continued at the same rate until the attainment of 65 years, and (b) the difference between his future pension rights based on the contributions which his former employer would have made under its existing pension plan had he remained in its employ until 65, and his pension rights based on his new employer's contributions under its existing pension plan if continued for a similar period. The contention is that such testimony, obviously offered on the issue of special damages, was inadmissible because based on unsupported assumptions as to the proper rate of discount for determining present value and as to what would have been the duration of plaintiff's employment by his old employer, but for the libel, or the duration (1) of his future employment with his new employer, (2) of his loss of reputation and reduced earning power, and (3) of the existing pension plans which as to future-accruing rights might be discontinued at the employers' option.

All objections based on such contentions we hold to have been properly overruled. There was highly credible evidence of plaintiff's history of business competence from which the jury might estimate the probable duration of his future employment. The actuary's figures were discounted—properly so for aught that appears—to reflect the possibility of death before 65. And a tort claimant is not to be held to the well-nigh

impossible burden of proving future damages with more certainty than that attaching to plaintiff's proofs here. The actuary stated evaluations based not only on a 2% rate, but also on a 3% and a 4% rate. It was left to the jury—and properly so on the record here—to decide which rate was appropriate and it was open to the appellant to offer evidence on that point. The jury was not bound by the testimony of plaintiff's actuary. And the award of special damages in the amount of $24,000 indicates that they liberally discounted the figures of the actuary apparently to reflect the uncertainties of the future to which appellant now points. Further claims of error based on the rulings on the evidence we hold to be without merit.

The appellant also claims error in the refusal of the trial judge to grant its request to charge, No. 5, which read, in so far as here pertinent:

"The defendant committed no violation of any rule of the New York State courts in making the publication complained of. It had the permission of a Justice of the Supreme Court to examine the papers in the separation action of plaintiff's wife, and the fact that such order was not in writing is without significance. Justices of the Supreme Court may issue valid oral orders when the persons to be affected are present."

 The circumstances under which the defendant's reporter obtained access to the papers in the separation suit are set forth at the beginning of this opinion. The plaintiff's complaint, obviously in support of plaintiff's claim for punitive damages, had charged that information from which the libel had been drawn had been obtained from the State Court "without court order or any other authority, illegally, improperly, contemptuously, and maliciously." The conduct of the appellant's reporter in obtaining access to the Stevenson matrimonial file had been vigorously attacked by plaintiff's counsel, and defended by appellant's counsel in their summations. Against this background, the charge to the point was clearly inadequate when it went no further than to say: "In determining the amount of such punitive damages, as well as in deciding whether they should be given at all, you may consider the nature of the publication, *the circumstances surrounding such publication, such as the manner in which the defendant obtained the information for the publication,* the motive of the defendant in publishing the article, and the extent of harm which it was a substantial factor in producing to the plaintiff." The charge thus properly recognized that the jury, in its decision as to punitive damages, should take into account the propriety of the defendant's conduct in obtaining the information. But it wholly failed to instruct the jury as to how it should judge of the propriety of the defendant's proven conduct. The subject-matter was one depending upon a question of law as to which the jury obviously needed appropriate instructions. We think it clear that the charge as given was inadequate in this respect.[2] The error was so vital that the verdict—or at least so much thereof as was predicated on punitive damages—cannot stand if the appellant was prejudiced thereby

2. Whether the instructions as to punitive damages were legally inadequate in any other respects is a question not saved by specific exception nor presented through refusal to grant any requested instructions. Nevertheless, we think it proper to make at least this observation. Compensatory damages, at least when awarded in substantial amount, have an obvious tendency to deter a defendant and others from other libelous conduct. Cf. Morris, Punitive Damages in Tort Cases, 44 Harv.L.R. 1173. Consequently, it would seem both proper and wise, in cases in which both compensatory and punitive damages are claimed, for the trier to remember, or to be reminded, that in addition to other factors to be considered punitive damages should be awarded only if and to the extent that such compensatory damages as may be awarded are found to constitute a deterrent not reasonably effective.

as would be the case if its request were sound and yet had been refused. We turn, therefore, to examine the validity of its position as stated in Request No. 5.

Rule 278 of the New York Rules of Civil Practice, under the heading of "Information as to details of matrimonial actions", provides as follows:

> "An officer of a court with whom the proceedings in an action * * * for divorce or separation are filed * * * or his clerk, either before or after the termination of the suit, shall not permit a copy of any of the pleadings or testimony, or any examination or perusal thereof, to be taken by any other person than a party, or the attorney or counsel of a party who had appeared in the cause, except by order of the court."

Clearly the conduct of the appellant's reporter was in violation of this Rule unless authorized by an "order of court." Thus is posed the question whether the informal permission which was given to Cohen by the Justice amounted to an "order of court" in the circumstances here.[3]

As to this, the New York Civil Practice Act, § 127, reads:

> "Definition of an order. A direction of a court or judge made in an action or special proceeding, must be in writing unless otherwise specified in the particular case."

▆▆▆▆ We hold that the exception made by Rule 278 "by order of the court" is limited by this section of the Practice Act which means just what it says. The rule recognizes a public policy[4] which precludes uncontrolled exposure of the detail involved in matrimonial actions to public view and the control provided is "order of court." Since the subject-matter is thus recognized as one touching public policy, it is altogether reasonable to infer an intent that an order of court shall stay the mandate of the rule only in situations to which the declared policy, in the court's discretion, is not applicable. We think it inherently reasonable to conclude that the Rule contemplated that discretionary orders thus touching public policy deserved the safeguard of written expression and that the legislature, in requiring that judicial directions in actions or special proceedings must be in writing, intended the requirement to be applicable to exceptive orders under the Rule.

Counsel for appellant argued both before the jury and before us on appeal that under the circumstances here it would have been a useless formality for appellant's reporter, when given oral permission to inspect the files, to have asked for a written order to that effect. But the argument, however plausible on the surface, is, we think, specious. Such a request might well have served to remind the Justice both of the existence of the rule and its applicability to the particular situation. It well may have been that after a busy morning on the bench dealing with upwards of twenty motions his mind was so filled with problems raised in contested motions that he completely forgot that the Stevenson motion, which had been withdrawn without contest, was among the others. A reminder of the rule by request for a written order might well have prevented the grant of a blanket permission. Certainly neither the testimony of the Justice nor that of Cohen, the reporter, all of which is included, *in extenso*, in the appendix to appellant's brief, contain anything to show that the public policy of the rule did not extend to the Stevenson papers.

We hold, therefore, that because appellant's Request No. 5 was not in accordance with the applicable law, its re-

3. Whether the Rule contemplated a *written* order, was a point not before the court in Stevenson v. News Syndicate Co., 302 N.Y. 81, 96 N.E.2d 187. For, as the opinion of the Appellate Division in that case shows, 276 App.Div. 614, 96 N.Y.S.2d 751, the complaint there alleged that the defendant there had obtained access to matrimonial files wholly "without court order" and the courts for purposes of these decisions assumed that allegation to be true.

4. Stevenson v. News Syndicate Co., 276 App.Div. 614, 96 N.Y.S.2d 751.

fusal was not error and the inadequacy of the charge to the point was not an error of which the appellant can complain.

■ The appellant criticizes the charge for the judge's failure to comment on the evidence. We agree that the case was one in which it would have been helpful to the jury and in accord with the better federal practice for the judge to marshal at least in outline the evidence on the principal contested issues. However, we cannot say that the charge was legally inadequate because of its failure to include balanced comment on the evidence. No exceptions to the charge as given were taken. We turn therefore to consider the claimed errors based on the appellant's requests to charge which the judge refused to grant.

■ By request No. 8, appellant asked the court to charge that the lapse of sixty days between the publication and the plaintiff's resignation might be considered on the issue of causal connection between the publication and the "resignation." The court in advance of the summations indicated that the request was granted but in the charge as given no reference was made to this lapse of time. In summation the appellant argued that if the discharge were the result of harmful publicity the employer would have accomplished the discharge forthwith, but "Instead,—they relieved Mr. Stevenson of duty for 90 days for the purpose of making a survey." It thus appears that appellant brought the point to the attention of the jury and, in view of the fact that the charge defined proximate cause in terms broad enough to permit consideration of the time lapse on that issue, we think a claim of prejudicial error cannot be predicated on the judge's failure, obviously inadvertent, to give this instruction even though he had previously indicated that the request therefor was granted.

Nor do we find any prejudicial error in the judge's treatment of appellant's other requests to charge. Of those to which appellant calls particular attention, a few

contained an inaccurate statement and application of the law and the others not suffering from such defects did not conflict with the substance of the charge as given. Several requests not granted referred to particular items of evidence favorable to the appellants' contention: if granted, fairness would have required that they be balanced by reference to countervailing items of evidence supporting plaintiff's position. As indicated above, we think a summary of the evidence on both sides of the principal issues would have been desirable. But the inclusion of such material was within the discretion of the judge. And since the charge was fair in that it did not recite, and thus stress, only the evidence favorable to one party, we hold that the judgment should not be reversed for failure to comply with these requests.

After verdict, appellant moved to set aside the verdict and for a new trial on the ground that the verdict was excessive. This motion the trial judge denied, with a brief memorandum, and the appellant now predicates error on that ruling.

■ It is now a settled rule that federal courts of appeal, and the Supreme Court as well, will not review the action of the trial court in granting or denying a motion for a new trial for error of fact. This rule "has been frequently applied where the ground of motion was that the damages awarded by the jury were excessive or inadequate." Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481, 53 S.Ct. 252, 77 L.Ed. 439. However, the case just cited recognizes the existence of appellate right to review a denial of a new trial for errors of law such as an erroneous conception by the trial judge as to "matters which were appropriate to a decision on the motion." We turn therefore to examine the memorandum of the trial judge for such light as it sheds on the bases of his ruling.

This memorandum recites: "The atmosphere of this trial, as the record clearly shows, was quite the antithesis of passion and prejudice. The amount of punitive damages in New York, as in other states, must rest in large measure

in the discretion of the jury and there is apparently no legal formula requiring 'that punitive and actual damages must bear a definite mathematical relationship.' Bell v. Preferred Life Assurance Society, 320 U.S. 238, 242, 64 S.Ct. 5, 88 L.Ed. 15."

█ From this it is plain that the denial of the motion was not based upon a mistaken belief by the trial judge that he lacked power to disturb a verdict tainted by passion or prejudice. It shows further that he acted in the belief that under the law there was no necessary and "definite mathematical relationship" between punitive damages, which here happened to be assessed at $50,000, and compensatory damages, which here happened to be assessed at $25,000. Although the Bell case, which he cited to the point, was one involving the law of Alabama, we hold that the law of New York, which is applicable here, is in accord. In Prince v. Brooklyn Daily Eagle, 16 Misc. 186, 37 N.Y.S. 250, it was held that punitive damages might be recovered in a case in which only nominal damages were found. Clark v. Variety, Inc., 189 N.Y.S. 462, 178 N.Y.S. 698, and Gomez v. Joyce, Super., 1 N.Y.S. 337, are to the same effect. And we find in Bergmann v. Jones, 94 N.Y. 51, sanction for instructions to a jury in accord with that rule. Annotations in 33 A.L.R. 384, 400 and 17 A.L.R. 2d 527, 542, indicate that the holding of these New York cases is in accord with the weight of authority elsewhere. See Bucher v. Krause, 7 Cir., 200 F.2d 576, for its holding that the same rule is recognized in Illinois.

█ Thus we find in the record nothing whatever to suggest that the judge, in the exercise of the wide discretion confided to him, acted under any misapprehension as to the law. And we have no basis for disregarding the admonition of Fairmount Glass Works v. Cub Fork Coal Co., supra, 287 U.S. at p. 485, 53 S.Ct. at page 255, 77 L.Ed. 439, that "Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct."

█ Finding that the action below did not proceed on error of law, our limited power of review is exhausted. To extend our review beyond this point would conflict with our long established practice, in accordance with the general rule of the Fairmount Glass case adverted to above, not to enter upon a consideration of whether the trial judge should have so appraised the facts evidenced in the record as requiring an exercise of his discretionary power to grant a new trial either with or without a conditional remittitur by the plaintiff of part of the verdict. Miller v. Maryland Casualty Co., 2 Cir., 40 F.2d 463; Caloric Stove Corp. v. Chemical Bank & Trust Co., 2 Cir., 205 F.2d 492; Kennair v. Miss. Shipping Co., Inc., 2 Cir., 197 F.2d 605; Nagle v. Isbrandtsen Co., Inc., 2 Cir., 177 F.2d 163; Press Publishing Co. v. Gillette, 2 Cir., 229 F. 108, certiorari denied 241 U.S. 661, 36 S.Ct. 448, 60 L.Ed. 1226. We are pointed to no special circumstances here which take this case outside the rule of these cases. Our decision in Herring v. Luckenbach S. S. Co., Inc., 2 Cir., 137 F.2d 598, 599, was cited by the appellant for the statement that "appellate courts act in general only where an improper excess is clearly ascertainable from the record." But it will be noted that the holding of that case is in accord with our general practice. And the exception in the quoted excerpt from the opinion when read in connection with the cases to which it refers is seen to be without application to the situation here.

The appellant suggests that appellate power to review a verdict for alleged excessiveness was recognized in a dictum in Affolder v. New York, Chicago & St. Louis R. R. Co., 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683,—a decision in 1950 which reversed on another ground a decision by the Court of Appeals for the Eighth Circuit. But the Eighth Circuit Court of Appeals, when the question was next before it, did not read Affolder as so holding, St. Louis Southwestern Ry. Co. v.

Ferguson, 8 Cir., 182 F.2d 949, and we agree. In Caloric Stove Corp. v. Chemical Bank, supra, decided by this court in 1953, some four years subsequent to the Affolder decision, we noted that the decision in Fairmount Glass Works v. Cub Fork Coal Co., supra, still "remained untouched." And we find no Supreme Court decision which sanctions more exceptions to the general rule of Fairmount Glass than those previously noted in Southern Ry.—Carolina Division Co. v. Bennett, 233 U.S. 80, 34 S.Ct. 566, 58 L.Ed. 860, the existence of which we recognized in Miller v. Maryland Casualty, supra. We conclude that in the situation here we are without power to extend our right of review beyond the search made as shown above for error of law entering into the discretionary action of the judge below.

This conclusion we think not in essential conflict with Judge Lindley's analysis in Bucher v. Krause, supra [7 Cir., 200 F.2d 587], upon which the appellant heavily leans. Certainly we agree with him as to the existence of a broad discretion in the trial judge in dealing with claimed excessiveness in a verdict. And as to power to review for "abuse of discretion," having recognized and exhausted our power to review for error of law entering into the exercise of discretion made below, consistently with the holding of Bucher v. Krause we are not empowered or required to look farther. For in that case Judge Lindley went no further than to construe the verdict there involved as one including punitive damages which, under applicable law, he broadly defined and found to be "peculiarly within the discretion of the jury and of the court presiding at the trial" and without prescribed relationship to compensatory damages. All this was essentially a search for error of law. We have done all that except to construe the verdict which in this case needs no construction because in express language $50,000 was awarded as "punitive damages."

Judgment affirmed.