BEN CONSTRUCTION CORPORATION
v.
The UNITED STATES.
No. 468-59.

United States Court of Claims.
Feb. 6, 1963.

Joseph J. Lyman, Washington, D. C., for plaintiff.

Mitchell Samuelson, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer for defendant; Edward S. Smith, Lyle M. Turner and Earl L. Huntington, Washington, D. C., were on the brief.

DURFEE, Judge.

Plaintiff, Ben Construction Corporation, sues to recover taxes paid during the period January 1, 1955, through June 30, 1958, pursuant to the Federal In-

surance Contributions Act, 26 U.S.C. (I.R.C.1954) § 3101 et scq. (1958 ed.), and the Federal Unemployment Tax Act, 26 U.S.C. (I.R.C.1954) § 3301 et seq. (1958 ed.).

Ben Construction Corporation is a home improvement contractor in the State of New York, engaged primarily in the business of applying new roofing and siding to buildings. Plaintiff advertises for, and procures the services of "applicators" who perform the actual physical labor involved. Applicators go to plaintiff's office and request work. Plaintiff will offer a qualified applicator a worksheet which describes the roofing and siding to be done on a particular structure, and if the applicator agrees, he is given the worksheet and directed to carry out the job. Upon ·finishing a roofing and siding project, the applicator obtains a certificate of completion from the property owner, delivers the certificate to plaintiff, and the applicator is thereupon paid for his labor. Payment is usually made on the basis of the amount of roofing and siding applied to the building.

Plaintiff contends that these applicators are not employees of Ben Construction Corporation within the meaning of sections 3121(d) and 3306(i) of the aforementioned Federal Acts. Plaintiff argues that they are independent contractors; consequently, plaintiff is not liable for, and should have refunded to it, the Federal employment taxes paid. Defendant asserts that the applicators are employees within these taxing statutes, and further, that the Federal District Court for the Northern District of New York has already determined this issue adversely to plaintiff. Ben v. United States, D.C., 139 F.Supp. 883, affirmed, per curiam 241 F.2d 127 (2 Cir., 1957).

Plaintiff Corporation was organized in 1954 under the laws of the State of New York. Prior to 1954, Leslie R. Ben, President of the Corporation, operated this same business as the Ben Construction Company.

Leslie R. Ben paid Federal employment taxes for the period July 1, 1948 through December 31, 1951, under 26 U.S.C. (I.R.C.1939), §§ 1400 et seq. and 1600 et seq. (1952 ed.). These sections of the 1939 Internal Revenue Code precede, and are substantially the same as, the provisions of the 1954 Code under which Ben Construction Corporation has paid the taxes involved in this litigation. Following payment of the 1948–1951 taxes, Mr. Ben requested that they be refunded to him for the same reason that the Ben Construction Corp. now seeks a refund in this case; that is, that the applicators are independent contractors, not employees. The Tax Administrator rejected Ben's 1948–1951 claim, and the suit that followed in the Federal District Court in New York upheld the Administrator's determination. Defendant submits that this prior Ben case is dispositive of the issues presented in this proceeding, and we should therefore dismiss plaintiff's claim for refund of the 1955–1958 taxes paid.

When two suits involve similar facts and issues, and the Court rendering the first judgment has fully considered all the evidence and given its decision thereon, the Court in the second case is free to follow that prior judgment upon the principle of *stare decisis,* provided such consistency is just and desirable. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

Ben v. United States, supra, determined that the roofing and siding applicators were not independent contractors but were employees of Leslie R. Ben, d/b/a Ben Construction Company. This question was, and is again in our case, "a close one." Ben v. United States, 241 F.2d 127, 128. There is nothing in either proceeding, however, which causes us to view the District Court's opinion as unjust or undesirable. Accordingly, we have determined to follow this holding and apply it as the rule in our case.

The prior suit brought by Leslie R. Ben concerned the 1939 Internal Revenue Code. We are dealing with the 1954 Code. A comparison of sections 1426(d) and 1607(i) of the 1939 Code, with sections 3121(d) and 3306(i) of the 1954

Code, respectively, convinces us that Congress intended to and did enact the same definitions of employee in the 1954 Acts that are given in the 1939 Code. Ben Construction Corporation does not even attempt to argue otherwise.

The only serious objection made by plaintiff in the case at bar to the extension and application of the prior holding, is its argument that the material facts in the employee-independent contractor dispute changed in the later tax years. Plaintiff asserts that there is a new situation existent in the 1955-1958 plaintiff-applicator relationship. Turning to the prior adjudication, at 139 F.Supp. 883, the Court stated on page 886, "The right of control over the applicator * * * is the emphasized element of the employer-employee relationship * * *." The facts the Court relied upon to demonstrate the control that Ben exercised over his applicators are all given in the opinion. They are the same facts that we have found to be present in this suit except for one or two variances which plaintiff points out and which we feel obligated to discuss. Chief Judge Brennan stated that for the 1948-1951 tax period, "the refusal of a particular job by an applicator in effect means the cessation of further opportunities for employment by the plaintiff * * *." (p. 886) We have found that for the 1955-1958 period, applicators were not required to accept every worksheet offered them by plaintiff as a condition to receiving further work from plaintiff. Applicators did on occasion reject a worksheet offered them by Mr. Ben and thereafter were offered other worksheets. In the prior years the applicators may not have worked for other roofing companies. However, in the later period, at least some applicators did jobs for other companies in between jobs for plaintiff. These asserted changes in Mr. Ben's operations, if they are such, are the ones plaintiff relies upon most confidently.

Granting that these are actual differences, the only thing they seem to add up to is a change in the amount of business plaintiff was doing. Evidently it was an employers' market in the prior years and an employees' market in 1955. Mr. Ben's testimony bears this out. In 1951 he could afford to be a bit more choosy with the applicators. It might have been because he had few competitors at the time, or he simply didn't have so many jobs lined up that he *needed* the applicators. In 1955 Ben realized that he wasn't going to get his jobs completed and get his money unless he could send the applicators out on the jobs. Ben now had to be more solicitous of these men; he could not afford to turn them away if they balked at a particular job, or had worked for another company.

The District Court held that, "All of the circumstances, from the time the applicator receives his worksheet down to the time of the completion of the job, indicate restrictions actually imposed upon and accepted by him in many respects." (p. 886). This control while the applicator is on a job for plaintiff is a different matter than plaintiff's ability to get the applicators in the first instance to perform for it. A secretary is no less an employee when others are offering her better wages and less hours, than she is when she couldn't possibly obtain another position. In effect, all that plaintiff has demonstrated to us is that the applicators were in a better bargaining position in 1955 than they were in 1951. It seems doubtful that this situation effects a vital change in the basic employer-employee relationship that Chief Judge Brennan has recognized.

There is serious doubt in our minds that the situation actually changed as much as we have just pointed out. Plaintiff presents the facts in a fashion too cut and dried: in 1951 no applicator would or could work for another company or refuse a worksheet; in 1955, the situation turned 180 degrees. In the District Court decision again, we note that the opinion carefully points out that many applicators are involved and "the decision will define the status of the workers collectively rather than individually." (p. 884). Further along the Court mentions that the work is seasonal

and that only some of the employees might be termed "regulars." Only one applicator, a regular, testified in this prior suit. For the 1955–1958 period there were only three or four "regulars," yet in the busy season there would be 20 or 30 applicators working. The non-regulars in both tax periods were obviously not full-year employees of plaintiff. Surely they worked somewhere else when not engaged with plaintiff, and possibly as applicators. They could not become employees until they actually accepted a job. In neither tax period was an applicator guaranteed another worksheet after he completed a roofing and siding project. During both periods the applicators were paid on the basis of the squares of siding or roofing they affixed to a customer's home; they were paid as soon as they finished a job. The employment in both tax periods then, is a series of stops and starts. In neither period of time was any applicator ever required to be on hand. There were no hours or days set by Ben for any of them to be at work. An applicator could go on vacation whenever he wished; he need never come back to Ben's office after he had once or fifty times taken a worksheet from plaintiff. Mr. Ben's assertion that in 1955 he would give a man a job even after he had turned down another worksheet, or had worked for another company, is not in reality a substantial change from the prior years. In 1951 he might not rehire the applicator, or keep him on after he turned down a job; in 1955 Ben appeared to be less demanding and the applicator more secure. In both 1951 and 1955 the applicator's relationship to plaintiff is marked by this stop and go status. In between jobs an applicator was not paid; he did not have to come back for another job; he could not be sure he would get another job. Plaintiff was not bound to give him more work. The relationship for both tax periods was rather clearly a job-to-job employment.

Ben v. United States, supra, states that the applicator, in 1951, was free to decline a worksheet, in which event Ben "generally" did not offer him another job. (p. 885). Again, applicators in 1951 were "not actually prevented" from doing work for other roofing companies. (p. 886). It is not unlikely that in these tax years Ben may, on occasion, have suffered an applicator to refuse one worksheet and then offered him another. The District Court opinion does not rule out this possibility.

In summary, the only evidence as to change in treatment of the applicators by plaintiff in the later tax years is Mr. Ben's testimony given at the trial before the Commissioner. Two applicators, the only other witnesses produced on plaintiff's behalf, testified that their arrangements with the Ben Construction Company did not differ from their arrangements with the Ben Construction Corporation. The new circumstances that plaintiff says existed in the 1955–1958 tax years are inconclusive.

This claim for a tax refund for the years 1955–1958 must be dismissed. We are satisfied that plaintiff's 1955–1958 business practices are for all significant purposes identical with Ben's 1948–1951 operations, and consequently we adhere to the precedent set by the prior Ben v. United States case, supra. The applicators engaged by plaintiff in the later tax years and involved in the present case were also employees of plaintiff.

■ Although it is not necessary to sustain the conclusion we have reached in this proceeding, we note that Ben Construction Corporation, plaintiff in this suit, is in privity with Leslie R. Ben, doing business as the Ben Construction Company, plaintiff in the prior suit. Leslie R. Ben and his wife own virtually all of the outstanding stock of the Ben Corporation. Ben's incorporation in 1954 cannot alone sever this continuity. United States Envelope Co. v. Transo Paper Co., 221 F. 79 (D.C.Conn.1915); Stafford v. Russell, 117 Cal.App.2d 319, 255 P.2d 872, cert. denied 346 U.S. 926, 74 S.Ct. 315, 98 L.Ed. 419 (1953); McNamara v. Powell et al., 256 App.Div. 554, 11 N.Y.S.2d 491 (1939).

Plaintiff's petition is dismissed, and judgment is entered to that effect.

JONES, Chief Judge, REED, Justice (Retired), sitting by designation and DAVIS and LARAMORE, Judges, concur.