Byron E. BRYAN, Executor of the Estate of Mary Z. Bryan, Deceased, and First-Citizens Bank and Trust Company of Smithfield and Raleigh, North Carolina, Executor of the Estate of James E. Bryan, Deceased, Successor Plaintiffs to Bryan Rock and Sand Company, Inc.[1]

v.

The UNITED STATES.
No. 112–57.

United States Court of Claims.
July 12, 1963.
As Amended Oct. 25, 1963.

Stanley Worth, Washington, D. C., for plaintiffs. Scott P. Crampton, Richard S. Doyle and Korner, Doyle, Worth & Crampton, Washington, D. C., were on the briefs.

Mitchell Samuelson, Washington, D. C., with whom was Louis F. Oberdorfer, Asst. Atty. Gen., for defendant. Lyle M. Turner and Earl L. Huntington, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LARAMORE, DURFEE and DAVIS, Judges.

DURFEE, Judge.

Plaintiffs sue to recover overpayment of Federal income taxes for fiscal years ending March 31, 1951 and March 31, 1952. The overpayment results from recomputation of the depletion allowance deduction on sand, gravel, and crushed stone quarries formerly owned by Bryan Rock and Sand Company, Inc. During prior tax years the depletion allowance

1. Substitution of parties plaintiff from Bryan Rock and Sand Company, Inc. to the executors of the estates of James

E. and Mary Z. Bryan is made by stipulation of counsel in open court.

was based upon the cost of the mined products. The Internal Revenue Code was amended in 1951 to provide for a percentage depletion allowance deduction of five percent of the selling price of the sand, gravel, and stone.[2] The company filed its 1952 return with a percentage depletion deduction and was allowed to recompute its 1951 return, utilizing the percentage depletion for the period January 1 to March 31, 1951, the last three months of that fiscal year.[3]

■■ The controversy concerns the interpretation to be given the word "property" in section 114(b) (4) (A) (iv) of the Internal Revenue Code of 1939. This subdivision provides that the depletion allowance

" * * * shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, * * *." 26 U.S.C. (I.R.C.1939) § 114(b) (4) (A) (iv)

It is plaintiffs' position that all of the mining property, the scattered parcels of land, must be gathered and treated as a single business unit; that this is the "property" for purposes of the 50 per centum limitation. Defendant contends that the separate and non-contiguous parcels of land in which the quarries have been dug, are to be treated individually; each quarry is to be accorded a depletion allowance not to exceed 50 per centum of the net profit derived from that site. In 1951 and 1952 the Bryan Company owned 13 locations from which it mined and sold rock, sand, and gravel. Twelve were in North Carolina and one in Virginia. Except for two, they were all 20 miles or more apart.

The sole stockholders of Bryan Rock and Sand Company, Inc., during fiscal 1951 and 1952, were Mr. and Mrs. James E. Bryan. They later dissolved the corporation and formed a general partnership, each owning 50 percent of the operation. James E. Bryan subsequently died in 1953 and the business became a limited partnership, with Mr. Bryan's estate owning 50 percent. After Mary Z. Bryan's death in 1957, her half interest was taken over by her estate. The business has otherwise remained unchanged though these mutations in legal ownership. By stipulation during oral argument, counsel have agreed that the executors of the estates of James E. Bryan, deceased, and Mary Z. Bryan, deceased, each own 50 percent of this claim, and have the legal capacity to bring this suit.

This question of the proper interpretation to be given the word "property" has already been the subject of litigation and judgment between plaintiffs and defendant. The United States Court of Appeals for the Fourth Circuit has affirmed a decision of the Tax Court, holding that plaintiffs must determine a depletion allowance for each quarry separately. The mines may not be taken together to constitute a single property from which plaintiffs derive net income for purposes of the percentage depletion. Bryan's Estate v. Commissioner of Internal Revenue, 290 F.2d 807 (4th Cir. 1961). The only differences in the proceeding before the Tax Court and the case at bar are these: the legal identity of the mining operators in 1952, the tax year involved (1954 in the Tax Court), and in that tax year plaintiffs owned three different quarries and did not operate four of the 13 quarries being mined in 1951 and 1952; nine quarries are common to each case. The first is a difference in form only, and the second and third variances are also without substance. It is not disputed that between 1951–1952 and 1954, there were no changes in the operation of the business or in the manner in which it was conducted. (finding 16(d)). There is likewise no difference in the applicable statutory law and Treasury Regulations.

---

2. Section 319(a) of the 1951 Revenue Act, approved October 20, 1951, 65 Stat. 497, amended section 114(b) (4) of the Internal Revenue Code of 1939.

3. Public Law 594, 82d Cong., approved July 21, 1952, 66 Stat. 820, permitted the company to amend its 1951 return.

These circumstances would seem to compel the application of the doctrine of collateral estoppel, thereby preventing plaintiffs from relitigating the exact same issue. The issue was, and is, the proper interpretation to be given the same section of the Internal Revenue Code. The operation of the business is identical in all the tax years. All of plaintiffs' mines were separate and non-contiguous in 1954, and the same was true in 1951–52.

However, plaintiffs rely on the fact that three new quarries were being operated in 1954, and four old sites were not, to avoid the proscription of collateral estoppel. The argument is well taken. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1947), states:

> " * * * But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. * * * "

However, the Supreme Court states in the same paragraph:

> " * * * In that situation (as quoted above), a court is free in the second proceeding to make an independent examination of the legal matters at issue. It may then reach a different result or, if consistency in decision is considered just and desirable, reliance may be placed upon the ordinary rule of *stare decisis.* * * * "

The suggestion of the Supreme Court to follow the ordinary rule of *stare decisis* is persuasive. Again, we have the same parties, the same issues, and identical but separable facts.

The Fourth Circuit has answered every argument put forward by plaintiffs in this case, and there is nothing in either proceeding which causes us to view the Circuit Court's decision as unjust or undesirable. Accordingly, we have determined to follow the Bryan's Estate case, supra, and apply it as the rule in our case. Ben Construction Corporation v. United States, Ct.Cl., 312 F.2d 781.

In view of the findings of the trial commissioner, with specific reference to findings 5, 6, 7 and 12, plaintiffs should recover the overpayment of taxes paid for the year 1951 which is attributable to an understatement of its allowable depletion in the amount of $31,029.67, subject to an offset of taxes due the defendant which is attributable to the erroneous deductions of $450 and $18,433.56. Plaintiffs should also recover the overpayment of taxes for the year 1952 which is attributable to an understatement of depreciation in the amount of $5,556.18, a deduction in the amount of $32,249.99, and a deduction for depreciation on equipment purchased in 1952 for $4,800, subject to an offset of taxes due the defendant which is attributable to erroneous deductions of $1,100, $4,800, and $14,807.23.

Defendant has raised an affirmative defense by way of offset, pertaining to a deduction of $6,570.74 taken by the Bryan Company on its 1952 return for cost of construction of a dam claimed to be a promotional and advertising expense by plaintiffs, which is referred to in findings 17 through 20. As to this issue, plaintiffs are entitled to recover in accordance with the findings.

Plaintiffs are entitled to recover in accordance herewith and judgment is entered for plaintiffs to such extent with the amount of recovery to be determined pursuant to Rule 38(c).