**LIFETIME SIDING, INC., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 58, Docket 29184.

United States Court of Appeals Second Circuit.

Argued Nov. 4, 1965.

Decided March 22, 1966.

Thomas C. Hartzell, Rochester, N. Y., for plaintiff-appellant.

Marvin J. Garbis, Atty., Dept. of Justice, Washington, D. C. (John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson and George F. Lynch, Attys., Dept. of Justice, Washington, D. C., John T. Curtin, U. S. Atty., and Stephen S. Joy, and C. Donald O'Connor, Asst. U. S. Attys., Buffalo, N. Y., on the brief), for defendant-appellee.

Before KAUFMAN and HAYS, Circuit Judges, and TIMBERS, District Judge.*

* Chief Judge of the District of Connecticut, sitting by designation.

1. Int.Rev.Code of 1954, §§ 3101, 3111, 26 U.S.C. §§ 3101, 3111 (1958).

2. Int.Rev.Code of 1954, § 3301, 26 U.S.C. § 3301 (1958).

3. Int.Rev.Code of 1954, §§ 3121(d) (2) and 3306(i), 26 U.S.C. §§ 3121(d) (2) and 3306(i) (1958).

4. The provisions of the social security and unemployment tax statutes here involved (as well as their predecessors) and the treasury regulations promulgated thereunder have been the subject of numerous decisions in this Circuit and elsewhere upon the issue of whether certain workmen (including roofing and siding "applicators") are employees or independent contractors. Ben v. United States, 241 F.2d 127 (2 Cir. 1957), af-

TIMBERS, District Judge:

Lifetime Siding Inc., a New York corporation engaged in the vicinity of Rochester in selling and applying new roofing and siding for homes in need of repair, appeals from a judgment of the United States District Court for the Western District of New York, John O. Henderson, District Judge, after a 4 day jury trial, dismissing its complaint in a tax refund suit brought pursuant to 28 U.S.C. § 1346(a) (1) to recover $7,556.80 of social security and unemployment taxes claimed to have been erroneously assessed and collected during the tax periods from July 1, 1957 through June 30, 1960 pursuant to the Federal Insurance Contributions Act (FICA) [1] and the Federal Unemployment Tax Act (FU TA).[2] On this appeal the critical issues are (1) whether the district court submitted to the jury under correct instructions the question whether the roofing and siding applicators were employees of appellant rather than independent contractors within the meaning of the statutes [3] and (2) whether the jury's special verdict that the applicators were employees is supported by the evidence. We hold that the question was correctly submitted to the jury and that the jury's special verdict is amply supported by the evidence. Accordingly, we affirm.[4]

firming 139 F.Supp. 883 (N.D.N.Y. 1956) (applicators); Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Higgins, 189 F.2d 865 (2 Cir. 1951) (circus performers); Radio City Music Hall Corp. v. United States, 135 F.2d 715 (2 Cir. 1943) (actors); Texas Co. v. Higgins, 118 F.2d 636 (2 Cir. 1941) (gasoline and oil distributor); E. F. Williams Co. v. United States, 139 F.Supp. 875 (N.D.N.Y.1956) (applicators); Silver v. United States, 131 F.Supp. 209 (N.D.N.Y.1954) (applicators). See Bartels v. Birmingham, 332 U.S. 126, 67 S. Ct. 1547, 91 L.Ed. 1947 (1947) (members of name bands); United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L. Ed. 1757 (1947) (coal unloaders and truck drivers); Hoosier Home Improvement Company v. United States, 350 F.2d 640 (7 Cir. 1965) (applicators); McGuire v. United States, 349 F.2d 644

## FACTS

■ Lifetime Siding, Inc. (the "company") employed salesmen (its employees, to be distinguished from "applicators") who obtained written contracts from home owners for application of roofing and siding materials to houses. The company checked the customer's credit; if satisfactory, the company made out a work order and gave it to an applicator who performed the work of affixing the roofing and siding materials to the building.

The work order given to the applicator described the work to be done, the amount of material to be applied, and the sum to be paid the applicator computed at $10 per square of material to be applied (a square consisting of 100 square feet). The applicator was directed to pick up a completion slip from the customer and, in some instances, a specified sum of money. The applicator was paid when the job was completed.

The required materials were furnished by the company and were delivered to the job site by the wholesaler at the company's request. Applicators provided their own tools, equipment and transportation. Aside from these items, they incurred no other expenses on the job. No time was specified within which the job must be completed.

The company's general manager inspected jobs in progress to see if the work was being performed according to specifications and in a workmanlike manner. Signs were placed at some job sites reading "Lifetime Siding, Inc." If the work was being done unsatisfactorily, the general manager would take the applicator off the job and bring in another crew to finish it. When completed work had to be corrected, the applicator was brought back to make the repairs without additional compensation.

Applicators were obtained through the company's newspaper advertisements promising "year-round steady work." The company's general manager passed on their capabilities, hiring only experienced men who did not need much supervision. While the company had hundreds of applicators on its pay records during the course of a year, there were about 25 regulars upon whom it could rely. During the years in question, the company had applicators who had worked from 5 to 10 years. It was the company's practice to continue using an applicator as long as his work was satisfactory. Applicators were free to turn down work orders from the company, but seldom did so. While free to take jobs on their own, applicators were encouraged to turn leads over to the company if they "wanted to work steady." They determined their own working hours, arranged their own work schedule and hired and paid their own helpers.

The company carried liability insurance for the applicators, although some carried their own. The benefits of a company pension plan, upon which the company paid all premiums, were made available to those applicators who had worked for the company 4 or more years. Bonus or vacation payments were given to the applicators based on their length of service.

There was other evidence, some indicating the employee status of the applicators and some pointing toward an independent contractor status. The foregoing summary is sufficient, however, to demonstrate that upon what may be said to have been a close question of fact the jury's special verdict that the applicators were employees and not independent contractors was amply supported by the evidence. The verdict must stand if the question was submitted to the jury under correct instructions.

(9 Cir. 1965) (truck unloaders or swampers); Service Trucking Co. v. United States, 347 F.2d 671 (4 Cir. 1965) (truck unloaders or gypsy chasers); Ben Construction Corp. v. United States, 312 F.2d 781 (Ct.Cl.1963) (applicators); United States v. Thorson, 282 F.2d 157

(1 Cir. 1960) (applicators); Westover v. Stockholders Publishing Company, 237 F.2d 948 (9 Cir. 1956) (newspaper route men and dealers). Cf. Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 3, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) (fishermen).

**660**

STANDARD FOR DETERMINING STATUS
OF APPLICATORS

█ The FICA and FUTA taxes here involved are measured by "wages" paid by an employer to an employee.[5] The definition of an "employee" under the FICA is "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee."[6] Under the FUTA the term "employee" is defined to exclude "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an independent contractor."[7]

The district court instructed the jury, in a charge to which no exceptions were taken, that the test to be used in determining the status of the applicators is the common law one applicable in tort actions under the doctrine of *respondeat superior:*

"Generally, an employer-employee relationship exists when the person for whom the services are performed has the right to control and direct the individual who performs the service, not only as to the result to be accomplished by the work, but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what is to be done, but also as to how and when it shall be done."

We hold that this is the correct test for determining whether employee status exists for purposes of FICA and FUTA taxes. As Judge Learned Hand succinctly stated in Radio City Music Hall Corp. v. United States, 135 F.2d 715, 717 (2 Cir.1943), "The test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said * * *." See cases cited supra note 4; Restatement (Second),

Agency § 220(2) (1958); Treas. Reg. § 31.3121(d)–1 (c) (2) (1954).

The district court enumerated some 18 relevant factors which the jury might take into account in applying the test it prescribed to determine the status of the applicators, emphasizing that no single factor was determinative. We hold that the district court was correct in so instructing the jury.

█ Appellant, having taken no exceptions to the charge and having failed to request the court further to charge the jury, may not be heard in this Court on its claim of "Basic Errors in Charge of The Court." Rule 51, Fed.R.Civ.P.; Guarnieri v. Kewanee-Ross Corp., 270 F.2d 575, 577 (2 Cir.1959); Maupin v. Erie R. Co., 245 F.2d 461, 462 (2 Cir. 1957); Troupe v. Chicago, D. & G. Bay Transit Co., 234 F.2d 253, 259–260 (2 Cir.1956); Kane v. American Tankers Corp. of Delaware, 219 F.2d 637, 640 (2 Cir.1955); United States v. Bruswitz, 219 F.2d 59 (2 Cir.1955), cert. denied, 349 U.S. 913, 75 S.Ct. 600, 99 L.Ed. 1247 (1955); Moore v. Waring, 200 F.2d 491, 492 (2 Cir.1952); Falkerson v. New York, New Haven & Hartford R. Co., 188 F.2d 892, 896 (2 Cir.1951); Westmoreland Asbestos Co. v. Johns-Manville Corp., 136 F.2d 844 (2 Cir.1943); 5 Moore's Federal Practice ¶¶ 51.03, 51.04, at 2502–2506 (2d ed. 1964).

ADMISSIBILITY OF EXHIBITS ON
ISSUE OF INTENT

█ Appellant urges as error the admission in evidence of various exhibits, and testimony with respect thereto, purporting to reflect the intent and belief of the parties as to the status of the applicators. Such evidence included a ruling by the New York State Labor Department, obtained at the request of the company's counsel, that the applicators were "independent persons" for purposes of the state unemployment tax; a determina-

5. Int.Rev.Code of 1954, §§ 3111, 3301, 26 U.S.C. §§ 3111, 3301 (1958).

6. Int.Rev.Code of 1954, § 3121(d) (2), 26 U.S.C. § 3121(d) (2) (1958).

7. Int.Rev.Code of 1954, § 3306(i), 26 U.S.C. § 3306(i) (1958).

tion by the Internal Revenue Service, obtained at the request of the company's counsel, that the company's pension plan, which was open to the applicators, qualified for certain tax benefits because the applicators were treated as "employees"; records showing the withholding of income taxes by the company from payments to the applicators; worksheets or contracts between the company and the applicators in which the latter were referred to as "subcontractors"; correspondence from the company's president to the Better Business Bureau of Buffalo and to a customer referring to the applicators in substance as employees; and a pamphlet, "The Voice of Lifetime," distributed by the company to the applicators, in which there appears the statement, "It seems that so often the salesmen forget that it's a team of sales personnel, office personnel and applicators that get the job done at Lifetime."

Appellant's claim of error with respect to this evidence is two-fold: (1) that it was irrelevant because the intent and belief of the parties as to the status of the applicators should have no bearing upon the determination of the relationship between the company and the applicators; and (2) that it was prejudicial because the references in the exhibits to such labels as "employees," "independent persons" and "subcontractors" may have confused and mislead the jury in its determination of the ultimate issue of whether the applicators were employees or independent contractors.

We reject appellant's claim that such evidence was irrelevant. The intent and belief of the parties as to the relationship between the company and the applicators was one of the factors, among many, to be considered by the jury. The district court so charged the jury. We have held that this charge was correct. No exceptions were taken.

Whether such evidence was prejudicial presents a closer question. The district court, in our view, properly could have excluded or admitted it. That is to say, it was within the court's discretion basically to determine whether the probative value of the evidence was outweighed by the possibility of prejudice and confusion from its admission. Uniform Rule of Evidence 45; United States v. Byrd, 352 F.2d 570, 574 (2 Cir.1965); United States v. Feldman, 136 F.2d 394, 399 (2 Cir.1943). We cannot say that the district court, sensitive to the pulse of the trial, abused its discretion in admitting the evidence—particularly in view of the court's limiting instructions when the evidence was admitted and its careful, painstaking charge that the evidence was to be considered only to the extent that it reflected the intent and belief of the parties as to the status of the applicators, and that such intent and belief was but one factor to be considered. We must assume that the jury followed the court's instructions, absent any indication to the contrary. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 77 L.Ed. 439 (1933); Stevenson v. Hearst Consol. Publications, Inc., 214 F. 2d 902, 911 (2 Cir.1954); Atchison, T. & S. F. R. Co. v. Andrews, 211 F.2d 264, 267 (10 Cir.1954).

We hold that the district court properly admitted, and correctly instructed the jury concerning, the evidence reflecting the intent and belief of the parties as to the status of the applicators.

PROPRIETY OF JURY DETERMINATION OF ISSUE OF STATUS OF APPLICATORS

██ The instant tax refund action was brought against the United States pursuant to 28 U.S.C. § 1346(a) (1) to recover taxes alleged to have been "erroneously paid to and unlawfully collected by the defendant." Congress has provided in 28 U.S.C. § 2402 that "any action against the United States under section 1346(a) (1) shall, at the request of either party to such action, be tried by the court with a jury." Under Rule 38 (a), Fed.R.Civ.P., "The right of trial by jury * * * as given by a statute of the United States shall be preserved to the parties inviolate." And, by the terms of Rule 39(a), once trial by jury has been demanded as provided in Rule 38(b), "trial of all issues so demanded shall be

by jury" unless the parties stipulate to trial by the court without a jury or the court finds "that a right of trial by jury of some or all of those issues does not exist under the \* \* \* statutes of the United States."

Here a timely demand for jury trial was endorsed by the United States upon its answer in an action in which a jury trial is expressly provided by statute. Absent specification of certain issues to be tried by jury, all issues are to be so tried. Rule 39(c).

Appellant's position, as we understand it, is not that the case is one that should not have been tried to a jury; rather, appellant contends that a verdict should have been directed in its favor on the ground that upon the undisputed facts the court should have determined that the applicators were independent contractors as a matter of law. We disagree.

As we have indicated above, the evidence presented a close question of fact which, under the controlling statutes, could be resolved only by the trier of the facts—here, the jury. We cannot say, as a matter of law, that upon the record before us reasonable men could not find that the applicators were employees and not independent contractors.

The situation here presented is closely parallel to that summarized by Judge Sobeloff in Service Trucking Co. v. United States, 347 F.2d 671, 673 (4 Cir.1965):

> "The facts stressed by the taxpayer indicate at most that the question of the unloaders' status is a debatable one, that is, one upon which reasonable men could differ. It cannot reasonably be said that this record points indisputably to but a single answer. If such were the case it would have been the duty of the Judge to grant a peremptory instruction to the jury. But analysis of the facts warrants different determinations depending on the relative weight and significance the fact finder attaches to various circumtances shown. The question was prop-

erly left to the jury, for in the system prevailing in federal trials this is within the jury's province, not that of the judge. Weighing the above facts and the conflicting inferences deducible therefrom, the jury found that the unloaders were employees of the taxpayer, not independent contractors. In this situation we are required to affirm the judgment based upon the jury's resolution of the issue in favor of the Commissioner of Internal Revenue. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960)."

See Baker v. Texas & Pac. R. Co., 359 U.S. 227, 228, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959); Hoosier Home Improvement Co. v. United States, 350 F.2d 640, 643 (7 Cir.1965).

We are not unmindful of the difficulties inherent in jury trial of issues even as relatively simple as those here involved.[8] Every district judge shudders at the prospect of presiding over the trial of a tax refund case with a jury. And issues far more complex than those presented by the instant case have been resolved by juries in tax refund cases. See, e. g., United States v. Duke Laboratories, Inc., 337 F.2d 280 (2 Cir. 1964) (accumulated earnings tax). While we may question the *wisdom* as a matter of policy of claiming such a case for jury trial, raising judicial eyebrows is about all we can do. Certainly it is not within our competence to question the *right* to jury trial granted by Congress; nor may we reverse the denial of a directed verdict upon an issue, properly claimed for jury trial, unless "reasonable men could not reach differing conclusions on the issue." Baker v. Texas & Pac. R. Co., supra at 228. This is not such a case.

We hold that the instant case was one properly claimed for jury trial, that the district court correctly denied appellant's motion for a directed verdict and that it properly submitted to the jury the ques-

---

8. See, generally, James, *Right To A Jury Trial in Civil Actions*, 72 Yale L.J. 655 (1963); 5 Moore's Federal Practice ¶ 38.16 (2d ed. 1964).

tion whether the applicators were employees of appellant or independent contractors.

Since we affirm the district court, there is no need for us to reach the further question raised by appellant whether we have the power to reverse and direct the entry of judgment in favor of appellant, or merely to order a new trial, absent a specific motion by appellant for judgment n. o. v. See Johnson v. New York, New Haven & Hartford R. Co., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952); Guarnieri v. Kewanee-Ross Corp., 270 F.2d 575, 580 (2 Cir.1959); McKee v. Sheraton-Russell, Inc., 268 F.2d 669, 671–672 (2 Cir.1959).

Affirmed.