**VALUTRON, N.V., Plaintiff,**

v.

**NCR CORPORATION, Defendant.**

**No. C–3–81–444.**

United States District Court,
S.D. Ohio, W.D.

Aug. 19, 1982.

Howard Krisher, Dayton, Ohio, Frank Scheck, New York City, for plaintiff.

Armistead Gilliam, Jr., Dayton, Ohio, Arthur Neustadt, Arlington, Va., Edward Dugas, Div. Patent Counsel, NCR Corp., Dayton, Ohio, for defendant.

DECISION AND ENTRY DEFERRING RULING ON MOTION TO DISMISS PENDING FILING OF AMENDED COMPLAINT BY PLAINTIFF NAMING MINORITY INTEREST HOLDERS; MOTION TO THEN BE DECLARED MOOT; CONFERENCE CALL SET

RICE, District Judge.

This matter is before the Court pursuant to the motion of Defendant NCR Corporation (NCR) to dismiss the Complaint under Fed.R.Civ.P. 12(b)(7), due to Plaintiff's failure to join indispensable parties. Based on the reasoning and authority set forth in the memoranda which have been filed by the Defendant, *see,* doc. # 15 and doc. # 24, the Court has concluded that Plaintiff must be required to file an amended complaint within 14 days of the receipt of the within entry, naming as parties plaintiff the minority interest holders who have been alleged to be indispensable parties.

On August 24, 1981, Plaintiff Valutron, N.V. filed the present action against NCR, claiming that it was the owner of an undivided majority of the right, title, and interest in United States Letters Patent No. 3,121,159, entitled "Central Office Massive Memory Recording System." Plaintiff further alleged that NCR had committed acts of infringement of that patent, and had continued to do so after being given actual notice of its infringement on April 12, 1978, and on other unspecified occasions thereafter. As was previously noted, NCR then filed a motion to dismiss the Complaint, based on the fact that the remaining 13 minority owners of the patent, who accounted for approximately 39 percent of the patent's ownership, had not been joined as parties to this action. Defendant has cited various cases in support of dismissal, including *Switzer Bros. v. Byrne,* 242 F.2d 909 (6th Cir.1957) (*Switzer*), and *Willingham v. Star Cutter Co.,* 555 F.2d 1340 (6th Cir.1977) (*Willingham*), wherein the Sixth Circuit cited the general rule that "all co-owners of a patent must be joined as plaintiffs before an infringement suit can be initiated." *Id.* at 1343, following *Waterman v. Mackenzie,* 138 U.S. 252, 255, 11 S.Ct. 334, 335, 31 L.Ed. 923 (1891) (*Waterman*).

Plaintiff has not disputed the above legal principle, but has contended that certain agreements executed by the minority interest holders operated to divest them of any ownership rights which would require their presence in this action. *See,* doc. # 21, and documents attached thereto as App. B. As a further matter, Plaintiff has claimed that even if the minority holders could be considered co-owners under *Waterman,* they are not indispensable parties under Fed.R.Civ.P. 19(b), because they have signed powers of attorney authorizing Plaintiff, Valutron, N.V., to bring legal action against accused infringers. *See,* doc.

# 21, and documents attached thereto as App. C. Based on these agreements, which indicate the minority owners' acquiescence in the institution of this action, as well as their willingness to be bound by the decision herein, Plaintiff has argued that there can be neither impairment of the minority holders' interest, nor a risk of duplicative litigation against Defendant so as to render these owners indispensable parties within the meaning of Rule 19.

In *Willingham,* 555 F.2d 1340 (6th Cir. 1977), the district court found that Willingham did not have the right to maintain an action for infringement because the Star Cutter Co. held an undivided interest in the patent in question and had not voluntarily joined the action. *See, id.* at 1342. On appeal, Willingham, like Plaintiff herein, contended that certain limitations contained in an agreement signed by the Star Cutter Co. were incompatible with a claim of ownership. *See, id.* at 1343. The Sixth Circuit disagreed, and by applying *Waterman,* concluded that while various rights had been reserved by Willingham, that was not sufficient to convert the interest of the Star Cutter Co. from an ownership interest into a license. *Id.* Accordingly, the Court determined that the two parties were co-owners of the patent. *Id.*

In the present case, Plaintiff has argued that the minority holders have divested themselves of ownership rights because they have executed agreements which give up rights to license and to enforce the patent, and which provide that Plaintiff's consent must be obtained prior to the disposition of the minority holders' interest in the patent. Although certain rights have been reserved by Plaintiff, the Court believes that sufficient rights were retained by the minority holders to warrant the conclusion that they are co-owners of Patent No. 3,129,159. In *Waterman, supra,* 138 U.S. 252, 11 S.Ct. 334, 31 L.Ed. 923 (1891), the Supreme Court indicated that "[w]hether a transfer of a particular right or interest under a patent is an assignment or a license does not depend on the name by which it calls itself, but upon the legal effect of its provisions." *Id.* at 256, 11 S.Ct. at 335. In

order to illustrate this point, the Court then distinguished between a grant of an exclusive right to make, use and vend patented machines, which would be considered an assignment, and the grant of an exclusive right which did not include all of these items, and would thus be considered only a license. *Id.* In *Switzer, supra,* 242 F.2d 909 (6th Cir.1957), the Sixth Circuit followed the analysis outlined in *Waterman,* and concluded that the transfer of certain rights, including the right to conduct and control litigation, did not constitute an assignment, and did not transfer the title or ownership to the patent. *See, id.* at 912. Although *Willingham, supra,* 555 F.2d 1340 (6th Cir. 1977) is more factually similar to the present case in that it involved agreements executed between co-owners of a patent rather than an alleged licensing agreement between patent owners and a licensee, *Switzer* is significant insofar as it adopted and approved the principles established in *Waterman,* and in *Crown Die & Tool Co. v. Nye Tool and Machine Works,* 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516 (1923), which are controlling with regard to the issues involved herein.

In the present case, the minority owners signed agreements restricting their ability to license, enforce, and assign the patent in question, but did not curtail their own ability to make, use, or vend the patented invention. For purposes of explanation, only one of the agreements contained in doc. # 21, App. B will be quoted; however, the pertinent contractual provisions for all the minority holders are essentially the same. Specifically, the agreement between Arista and Valutron, N.V., provided that:

4. ARISTA will give no license or sublicense for use, manufacture, or sale under the Patent and will not undertake to enforce the Patent or to collect any fees under the Patent, except upon written consent from VALUTRON.

5. ARISTA shall make no assignment of any of its interest in the Patent until the proposed assignee shall have entered into a written agreement with VALUTRON to accept for itself and to adhere

to such restrictions on the ownership of the Patent as are stated in paragraph 4 hereinabove and in this paragraph 5.

In *Crown Die & Tool Co. v. Nye Tool & Machine Works,* 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516 (1923), the Supreme Court rejected the assertion that an "assignment" similar to the one above either effected a transfer of any part of the title to the patent, or entitled the plaintiff in the case to bring an action "without joining with it the owner of the patent when the infringements were committed." *Id.* at 39–40, 43 S.Ct. at 257–58. In addition, 35 U.S.C. § 262 indicates that "[i]n the absence of any agreement to the contrary, each of the joint owners of a patent may make, use or sell the patented invention without the consent of and without accounting to the other owners." Since the agreements in question placed no conditions on the making, use, or sale of the patented invention by the minority holders, it is apparent, under the cited authority, that the minority owners retained ownership rights in the patent, and must be treated as co-owners.

As was previously indicated, Plaintiff has contended that even if the minority interest holders were co-owners under *Waterman,* they are not indispensable parties under Fed.R.Civ.P. 19, because they have executed powers of attorney authorizing Plaintiff to bring legal claims against accused infringers of the patent without the participation of the minority owners. *See,* doc. # 21, and documents attached thereto as App. C. In *Willingham, supra,* 555 F.2d 1340 (6th Cir.1977), the Sixth Circuit considered the effect of a similar agreement, which authorized one of the co-owners to initiate suit where the other co-owner failed or refused to do so, and which further permitted the party bringing suit to keep any recovery awarded. *See, id.* at 1342–1343. The Court noted, after a review of the relevant case law, that:

> The decisions indicate three primary interests protected by a requirement that all co-owners must join in a patent infringement suit: (1) the interest of a co-owner in being able to license third parties under his or her patent without parties under his or her patent without harassing suits by other co-owners; (2) the interest of a co-owner in avoiding the estoppel effect of a judgment declaring the patent invalid in which he or she did not participate; and (3) the interest of a defendant in avoiding multiple suits concerning infringement of the same patent.

*Id.* at 1344.

The *Willingham* Court then concluded that by executing the agreement in question, the co-owner had "waived protection of the two interests it had in preventing an infringement suit on its patent without its voluntary joinder in the action." *Id.* at 1345. The Court also found, however, that joinder of the co-owner was required because of the possibility that the defendants in the case could be prejudiced by having to relitigate the same issues later in another "costly and vexatious proceeding." *Id.* Moreover, the Court reached this decision despite its recognition that collateral estoppel and res judicata might apply to the later proceeding, and, despite the fact that attorney fees could be awarded to the defendants in any later action under 35 U.S.C. § 285. *See, id.* at 1345 & n. 7. Based on the decision in *Willingham,* which appears to be dispositive of the point under consideration herein, the Court concludes that the minority interest holders of Patent No. 3,121,159 should have been joined in this action.

However, also on the basis of *Willingham,* which indicates the propriety of involuntarily joining co-owners, *see, id.* at 1346, the Court will permit Plaintiff to file an amended Complaint within 14 days of the receipt of the within entry, in order that said minority holders may be joined as Plaintiffs in this action, and if they refuse to participate or cannot be made parties, then they will be added as involuntary plaintiffs under Fed.R.Civ.P. 19(a). *See also, Independent Wireless Telegraph Co. v. Radio Corp. of America,* 269 U.S. 459, 473–474, 46 S.Ct. 166, 171, 70 L.Ed. 357 (1926). The Court also notes that any problems regarding involuntary joinder, *see, Followay Productions, Inc. v. Maurer,* 603 F.2d

72, 74–75 (9th Cir.1979), would appear to have been obviated by the fact that under the ruling in *Willingham, supra,* 555 F.2d 1340 (6th Cir.1977), the minority interest holders herein appear to have waived any objection to joinder by executing the agreements attached as App. C to doc. # 21.

Ruling upon the Defendant's motion to dismiss is deferred pending the filing of the aforesaid amended complaint by the Plaintiff, after which said event, the motion will become moot.

Counsel listed below will take note that a telephone conference call will be had between Court and counsel at 9:00 a.m. on Monday, August 23, 1982, for the purpose of discussing, *inter alia,* the viability of the September 13th trial date, in light of the discovery which was stayed pending resolution of the above discussed motion.