**Allen G. EICKMEYER and Marjorie L. Eickmeyer, Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**No. 348–85T.**

United States Claims Court.

June 16, 1986.

See also, 10 Cl.Ct. 598.

A. Glenn Sowders, Jr., Kansas City, Mo., for plaintiffs.

David C. Hickman, Washington, D.C., with whom were Michael J. Dennis, Mildred L. Seidman, and Acting Asst. Atty. Gen. Roger M. Olsen, for defendant.

ORDER

NETTESHEIM, Judge.

This case is before the court on cross-motions for summary judgment after argument. The facts that are not a matter of contractual interpretation are drawn from defendant's proposed findings of fact; plaintiffs have not taken exception by filing a statement of genuine issues under RUSCC 56(d)(2) with respect to defendant's proposed findings in support of its cross-

meaning, rendering the release virtually meaningless).

motion or put forth any facts that would impede a grant of summary judgment. In fact, plaintiffs on reply state that defendant's factual statement is "substantially correct." Plfs' Br. filed May 28, 1986, at 2.

The issue to be resolved is whether the provisions of ten agreements differ substantially from the provisions of eight other agreements that have been held by a federal appellate court to generate payments taxable as ordinary income and not long-term capital gains under section 1235(a) of the Internal Revenue Code, 26 U.S.C. § 1235(a) (1976) (the "I.R.C."). If this issue is resolved in the affirmative, the question becomes whether the ten agreements transferred an undivided interest in a patent or lesser rights, the latter rendering the agreements non-exclusive licenses.

## FACTS

Plaintiffs sued to recover $265,087.09 in income tax and $95,570.77 in assessed interest, plus statutory interest, for the years 1974 to 1978 inclusive. Plaintiffs are husband and wife. Plaintiff Marjorie L. Eickmeyer is a party because plaintiffs filed a joint tax return. Plaintiff Allen G. Eickmeyer ("plaintiff") invented, developed, and subsequently patented the Catacarb Process, which involves the separation of acid gases from liquid or gaseous mixtures and is utilized in the oil refining, petrochemical, and fertilizer processing industries. A patent was issued to plaintiff in late 1974.

Between 1970 and 1976, plaintiff entered into agreements with ten separate entities for the sale of interests in his patent. Eight of those interests are purported one-percent undivided interests. The sale of all substantial rights or an undivided interest in a patent is taxable as a capital gain under I.R.C. § 1235(a). Plaintiffs say that the remaining agreements constitute "non-exclusive licenses," Plfs' Br. filed May 28, 1986, at 4, which ends the case as to the agreements with C.F. Braun & Co. and I.S.A.B., S.p.A.*

---

* At argument plaintiffs' counsel confirmed that the Braun and I.S.A.B. agreements were not

For the calendar years 1974 to 1978, plaintiffs reported all income from the ten agreements as long-term capital gains. On audit the Internal Revenue Service (the "IRS") treated each of the transactions as the receipt of income from a license and, therefore, taxable as ordinary income. As a result, plaintiffs were assessed and paid additional taxes and interest.

After denial of their timely filed claims by the IRS, plaintiffs sued for refund claiming that they sold to each of the entities in dispute all substantial rights to the patent or an undivided interest therein, thereby entitling them to long-term capital gains tax treatment. Plaintiffs moved for summary judgment, and defendant cross-moved on the ground that prior litigation involving three of the ten agreements should be dispositive of the claims in this case.

## DISCUSSION

I.R.C. § 1235 prior to amendment in 1976 provided:

*Sale or exchange of patents*

(a) *General*

A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use, or disposition of the property transferred.

Treas.Reg. § 1.1235–2(a) (1976), provided:

*Patent.* The term "patent" means a patent granted under the provisions of

---

sales of an interest in a patent.

title 35 of the United States Code, or any foreign patent granting rights generally similar to those under a United States Patent. It is not necessary that the patent or patent application for the invention be in existence if the requirements of section 1235 are otherwise met.

Treas.Reg. § 1.1235–2(c) (1976), provided:

*Undivided interest.* A person owns an "undivided interest" in all substantial rights to a patent when he owns the same fractional share of each and every substantial right to the patent. It does not include, for example, a right to the income from a patent, or a license limited geographically, or a license which covers some, but not all, of the valuable claims or uses covered by the patent. A transfer limited in duration by the terms of the instrument to a period less than the remaining life of the patent is not a transfer of an undivided interest in all substantial rights to a patent.

### Collateral Estoppel

The Federal Circuit utilizes a four-part test to determine whether a party is collaterally (or directly) estopped. There must be identical issues, actually litigated in an action in which the party to be estopped is fully represented and which generate findings necessary to a judgment. *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983); *cf. Block v. USITC*, 777 F.2d 1568, 1571 (Fed. Cir.1985).

Whether the agreements relating to plaintiff's patent transferred all substantial rights in the patent or an undivided interest therein entitling plaintiffs to long-term capital gains tax treatment under I.R.C. § 1235(a) was previously litigated by plaintiffs with respect to eight agreements and earlier years (1968–1970) in *Eickmeyer v. Commissioner*, 580 F.2d 395 (10th Cir. 1978) ("*Eickmeyer I*"), *rev'g* 66 T.C. 109 (1976). The Tenth Circuit held that substantial rights were not transferred because the transferees remained under plaintiff's control, as evidenced by plaintiff's retention of the right to collect for all

uses of the patent, whether by the original transferee or by a subtransferee; plaintiff's unlimited power to create new licenses or owners; and plaintiff's failure to transfer the right to exclude others from use of the patent. 580 F.2d at 400.

Three of the agreements in *Eickmeyer I* —with Chemical Construction Corp., M.W. Kellogg Co., and J.F. Pritchard & Co.—are again the subject of litigation in the instant action. Defendant concedes that collateral estoppel does not apply to the agreements not previously litigated, but argues that collateral estoppel should bar revisiting the three agreements which were the subject of the earlier litigation, citing *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). *Sunnen* applied collateral estoppel where a question of fact that has been litigated was identical for different tax years and no intervening doctrinal change had occurred. 333 U.S. at 601, 68 S.Ct. at 721, 92 L.Ed. at 601–02; *accord Southwestern Life Insurance Co. v. United States*, 9 Cl.Ct. 102, 105 (1985). The Tenth Circuit in *Eickmeyer I* made a final determination that the Chemical Construction, Kellogg, and Pritchard agreements constituted licenses taxable as ordinary income. Plaintiffs admit that the Chemical Construction and Pritchard agreements "are identical with the other case," Plfs' Br. filed May 28, 1986, at 3, and that the application of I.R.C. § 1235(a) and the regulations have not changed. Plfs' Br. filed May 28, 1986, at 3–4.

Plaintiffs point to three letter amendments to the Kellogg agreement that "were omitted inadvertently when submitting such contracts in the prior case." Plfs' Br. filed Nov. 29, 1985, at 9. Two letters changed the amounts of compensation, and the third extended the agreement to one of Kellogg's affiliates, per the underlying agreement. These amendments did not detract from any of the facts forming the basis of the Tenth Circuit's conclusions in *Eickmeyer I* that plaintiff did not transfer an undivided interest in all of the rights that are part of ownership of the patent, that plaintiff could create additional

interests, and that the transferees were not owners because they were accountable to plaintiff. 580 F.2d at 400. The amendments to the Kellogg agreement thus do not change the provisions considered by the Tenth Circuit as the basis for its decision. Counsel for plaintiffs conceded in argument that "nothing" was present in the letters "that would materially alter the Kellogg agreement."

Plaintiffs argue the differences in the remaining five agreements—with U.B.E; Chiyoda Chemical Engineering & Construction Co., Ltd.; Boston Gas. Co.; Singapore Petroleum Co. (Private), Ltd.; and Integral Engineering—are substantial enough to merit "a fresh look at the primary question involving long-term gains on the sale of an undivided interest in patents." Plfs' Br. filed May 28, 1986, at 4. According to plaintiffs, seven of the nine agreements now in litigation (there are ten) "purport," *id.* at 2, to sell an undivided interest, whereas only five of the twelve prior agreements contained such language; four of the prior agreements did not quantify the undivided interest sold; and three additional prior agreements indicated transfer of a non-exclusive license. However, the practical effect of the interest transferred is determinative. As noted in *Eickmeyer I,* a court "must consider the consequences which flow from this 'undivided interest.'" 580 F.2d at 399.

■ Plaintiffs further argue that collateral estoppel should not apply because the 1974 patent had not been issued when the case was litigated in the Tax Court and that additional patents were issued during the years 1974 to 1978. Patents or patent applications need not be in existence if the requirements of I.R.C. § 1235(a) are otherwise met. Treas.Reg. § 1.1235-2. In *Eickmeyer I* the terms of the agreements were the basis of the appellate court's determination that the requirements of I.R.C. § 1235(a) were not met; the existence *vel non* of a patent played no role.

■ Since defendant has not urged application of this preclusive doctrine with respect to these five remaining agreements,

it is only necessary to rule that plaintiffs' contractual agreements with Chemical Construction, Kellogg and Pritchard have not changed since the decision in *Eickmeyer I,* nor have there been any changes in the application of the controlling law. Plaintiffs therefore are estopped from relitigating their tax treatment under I.R.C. § 1235(a) as it relates to these three agreements.

*Stare Decisis*

The Supreme Court in *Sunnen* concluded that if the facts in two cases are separable, although similar or identical, collateral estoppel does not govern the legal issues in the later case. 333 U.S. at 601, 68 S.Ct. at 721, 92 L.Ed. at 601–02. The example given by the Supreme Court of separable facts is present here: "an instrument identical with, but in form separable from, the one dealt with in the first proceeding." *Id.* In such a case, "[a] court is free in the second proceeding to make an independent examination of the legal matters in issue. It may then reach a different result or, if consistency in decision is considered just and desirable, reliance may be placed on the ordinary rule of *stare decisis....*" *Id.* Based on *Sunnen,* the Court of Claims ruled that where the earlier case involved the same parties, the same issues, and identical but separable facts; where the earlier case responded to all of a party's arguments; and where there is nothing to indicate that the prior result was unjust or undesirable, the same result should be reached. *Bryan v. United States,* 162 Ct.Cl. 440, 444, 319 F.2d 880, 882 (1963); *see Southwestern Life Insurance Co. v. United States,* 9 Cl.Ct. at 105. The Supreme Court cautioned in a later criminal case that "any departure from the doctrine of *stare decisis* demands special justification." *Arizona v. Rumsey,* 467 U.S. 203, 212, 104 S.Ct. 2305, 2311, 81 L.Ed.2d 164, 172 (1984) (citations omitted).

Plaintiffs argue that the parties to the subject agreements are different. In resolving whether an undivided interest in a patent has been transferred pursuant to I.R.C. § 1235(a), the terms of the subject

agreements are pivotal. The identities of the parties to these agreements are not, but the identities of the parties to the litigation are. Here, they are the same, and plaintiffs' counsel is the same.

At least one of the contractual elements on which the *Eickmeyer I* court based its decision is present in the agreements now presented for review. Specifically, all the agreements in both cases retain the right to create new licenses or owners. The issue remains the same: whether plaintiff transferred an undivided interest in the Catacarb Process, defined by Treas.Reg. § 1.1235–1(c) as ownership of the same fractional share of each and every substantial right to a patent.

The decision in *Eickmeyer I* was based in part on plaintiff's failure to relinquish control of the patent. The Tenth Circuit cited his retention of the right to collect for all uses of the patent, whether by the original transferee or by a subtransferee, reasoning that the transferees were not owners because they were unable to profit from assignment of their interests. *See* 580 F.2d at 399. Defendant notes that transfer of the right to make subassignments is not always required for the transfer of all substantial rights to a patent. Def's Br. filed Mar. 26, 1986, at 20 (citing *Rollman v. Commissioner*, 244 F.2d 634 (4th Cir.1957); *Watson v. United States*, 222 F.2d 689 (10th Cir.1955); *Allen v. Werner*, 190 F.2d 840 (5th Cir.1951)). Moreover, the obligation to account to plaintiff for the transferee's extension or grant of the interest conveyed is found only in the agreement with Bechtel Corp. and has no counterpart in the agreements in this case.

The Tenth Circuit also cited plaintiff's retention of the power to create additional interests, noting that capital gains tax treatment pursuant to the sale of a patent requires " 'a transfer of a measurable, identifiable share, and not of an undefined one of elastic proportions dependent upon how many subsequent "shares" the grantor might elect to create.' " 580 F.2d at 400 (quoting *Walen v. United States*, 273 F.2d 599, 602 n. 3 (1st Cir.1959)). Plaintiff re-

tains in each of the remaining agreements in dispute the right to sell additional one-percent undivided interests up to 100 percent, since the fractional share alienated must be the same under Treas.Reg. § 1.1235(a). Therefore, the interest is finite, although small.

Finally, the *Eickmeyer I* court noted that plaintiff's assignments of purported undivided interests withheld the right to exclude others from use of the patent. 580 F.2d at 400. This fact was cited as proof that no substantial interest in the patent was granted. However, certain of the agreements in this and the prior litigation provide that transferees have the right to bring suits for infringement of patent rights. Such a provision is tantamount to the right to exclude others from use of the patent, other than those under the umbrella of an agreement with plaintiff. The *Eickmeyer I* court said that "in genuine owner situations each of the owners can grant a license, assign his share of the patent, and sue for infringement or for royalties." 580 F.2d at 399 (citation omitted). The Tenth Circuit did not take into account the presence of such a provision.

■ The case at bar presents the same issues, parties, and legal principles as *Eickmeyer I*. The problem is that two of the factors key to the Tenth Circuit (the elastic market and power to exclude) are not factors in the remaining five agreements. In these circumstances an independent examination should be made by this court, as suggested by the Supreme Court in *Sunnen*.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. Defendant's cross-motion for summary judgment is granted with respect to the claims based on the Braun, I.S.A.B., Chemical Construction, Kellogg, and Pritchard agreements.

2. Ruling on defendant's motion as to the five remaining agreements is deferred. Plaintiffs' cross-motion for summary judg-

ment is granted only insofar as a fresh look will be taken at the remaining five agreements.

3. Plaintiffs shall file by June 23, 1986, a supplemental brief addressed to the issue whether the remaining five agreements conveyed an "undivided interest" consistent with I.R.C. § 1235(a). They should discuss whether retention of the right to collect for all uses of the patent by a transferee is consistent with the notion of a sale or assignment. *See E.I. du Pont de Nemours & Co.*, 153 Ct.Cl. 274, 287–88, 288 F.2d 904, 911–12 (1961).

4. Defendant shall respond by July 7, 1986.