**Allen G. EICKMEYER and Marjorie L. Eickmeyer, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 348–85T.

United States Claims Court.

Aug. 14, 1986.

A. Glenn Sowders, Jr., Kansas City, Mo., for plaintiffs.

David C. Hickman, Washington, D.C., with whom were Michael J. Dennis, Mildred L. Seidman, and Acting Asst. Atty. Gen. Roger M. Olsen, for defendant.

### OPINION

NETTESHEIM, Judge.

This case is before the court on cross-motions for summary judgment as supplemented by briefs filed pursuant to *Eickmeyer v. United States*, 10 Cl. Ct. 179 (1986) (order granting in part motion for summary judgment).

Plaintiffs sued to recover income taxes paid for the years 1974–1978 on patent royalty revenues flowing from ten agreements. After argument on the first round of summary judgment motions, the complaint was dismissed with respect to three agreements on the basis of collateral estoppel and with respect to another two after plaintiffs conceded that they were licenses. The question to be resolved now is whether the remaining five agreements constitute transfers of undivided interests in a patent or licenses. If the former, section 1235(a) of the Internal Revenue Code, 26 U.S.C. § 1235(a) (1976) (the "I.R.C."), subjects royalties received from the agreements to capital gains rates. If the agreements are

licenses, the royalties are taxed as ordinary income.

## FACTS

Plaintiffs are husband and wife. Plaintiff Marjorie L. Eickmeyer is a party because plaintiffs filed a joint tax return. Plaintiff Allen G. Eickmeyer ("plaintiff") invented, developed, and subsequently patented the Catacarb Process, which involves the separation of acid gases from liquid or gaseous mixtures and is utilized in the oil refining, petrochemical, and fertilizer processing industries. A patent was issued to plaintiff in late 1974.

Between 1970 and 1976, plaintiff entered into five agreements with companies unrelated to plaintiffs or to each other, as follows: Ube Industries, Limited ("UBE"); Chiyoda Chemical Engineering & Construction Co., Ltd. ("Chiyoda"); Boston Gas Co.; Singapore Petroleum Company (Private), Limited ("Singapore"); and Integral Engineering. Plaintiffs contend that each of these five agreements conveys a one-percent undivided interest in the Catacarb patent.

For the calendar years 1974–1976 and 1978, plaintiffs reported all income from the five agreements as long-term capital gains. On audit the Internal Revenue Service (the "IRS") treated each of the transactions as the receipt of income from a license and, therefore, taxable as ordinary income. As a result, plaintiffs were assessed and paid additional taxes and interest.

After the IRS denied their timely filed claims, plaintiffs sued for refund claiming that they sold to each of the entities in dispute all substantial rights to the patent or an undivided interest therein, thereby entitling them to long-term capital gains tax treatment.

## DISCUSSION

I.R.C. § 1235 prior to amendment in 1976 provided:

*Sale or exchange of patents*

(a) *General*

A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months regardless of whether or not payments in consideration of such transfer are—

(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(2) contingent on the productivity, use, or disposition of the property transferred.

Treas.Reg. § 1.1235–2(b)(1) (1976), provided:

*All substantial rights to a patent.* The term "all substantial rights to a patent" means all rights (whether or not then held by the grantor) which are of value at the time the rights to the patent (or an undivided interest therein) are transferred. The term "all substantial rights to a patent" does not include a grant of rights to a patent:

\*　　\*　　\*　　\*　　\*　　\*

Which grants to the grantee less than all the claims or inventions covered by the patent which exist and have value at the time of the grant.

Treas.Reg. § 1.1235–2(c) provided:

*Undivided interest.* A person owns an "undivided interest" in all substantial rights to a patent when he owns the same fractional share of each and every substantial right to the patent. It does not include, for example, a right to the income from a patent, or a license limited geographically, or a license which covers some, but not all, of the valuable claims or uses covered by the patent. A transfer limited in duration by the terms of the instrument to a period less than the remaining life of the patent is not a transfer of an undivided interest in all substantial rights to a patent.

"Whether a transfer of a particular right or interest under a patent is an assignment

or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions...." *Waterman v. Mackenzie,* 138 U.S. 252, 256, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891). The case law on sales of undivided interests in a patent is scant. That developed for sales of patents themselves is of assistance, since pursuant to Treas.Reg. § 1.1235–2(c), one owns an undivided interest in all substantial rights to a patent when one owns the same fractional share of each and every substantial right to the patent.

1. *The right to sue for infringement*

■ In *Eickmeyer v. Commissioner,* 580 F.2d 395 (10th Cir.1978), *rev'g* 66 T.C. 109 (1976) (*"Eickmeyer I"*), which involved three agreements as to which the complaint has been dismissed, the court said that "in genuine owner situations each of the owners can grant a license, assign his share of the patent, and sue for infringement or for royalties." 580 F.2d at 399 (citing *Willingham v. Star Cutter Co.,* 555 F.2d 1340, 1344 (6th Cir.1977)). It is true that a basic distinction between the transfer of a license and the transfer of a patent is whether the transferee has recieved the right to sue for infringement. *E.g., Hooker Chemicals & Plastics Corp. v. United States,* 219 Ct.Cl. 161, 174, 591 F.2d 652, 658 (1979) (per curiam) (citing, *inter alia, E.I. du Pont de Nemours & Co. v. United States,* 288 F.2d 904, 911–12, 153 Ct.Cl. 274 (1961)). If such a right to sue for infringement is transferred, the transferee has received an assignment. If no such right to sue is transferred, the transferee has received a license.

Of the five agreements still in litigation, only that with UBE conferred a right to sue for infringement. However, as defendant argues, in co-owner situations the right to sue independently·for infringement cannot be conferred. *Willingham* stands for the proposition that all co-owners must join in a patent infringement suit. *Willingham,* 555 F.2d at 1343–44; *accord* R. Ellis, *Patent Assignments and Licenses* § 400 (3d ed. 1955) [hereinafter cited as "Ellis"];

*see Cilco, Inc. v. Copeland Intralenses, Inc.,* 614 F.Supp. 431, 434 (S.D.N.Y.1985). Thus, one co-owner cannot sue independently for infringement or compel other co-owners to join in such a suit absent an agreement among all co-owners permitting him to do so. *Cilco, Inc., id.;* Ellis § 401. *But see Valutron, N.V. v. NCR Corp.,* 99 F.R.D. 254 (S.D.Ohio 1982).

The Tenth Circuit's reference in *Eickmeyer I* to the right to sue for infringement was misplaced in the context of co-ownership of a patent. Consequently, defendant is correct that the issue has no pertinency in this case except insofar as one of the five agreements provides that any recovery in an infringement action would not be in proportion to the co-owner's interest.

2. *The division of awards in infringement suits*

Defendant contends that each of the five agreements fails to convey all substantial rights because none provides for a division of awards from patent infringement actions according to the percentage of interest owned by the respective assignee. Indeed, the agreement with UBE gives the transferee the right to retain all sums awarded in any infringement suit that it initiates. The only authority on point, however, suggests that in co-owner situations recoveries are divided according to each owner's respective interest. *See* Ellis § 400 (quoting *Herring v. Gas Consumers' Association,* 9 F. 556 (C.C.E.D.Mo.1878)).

Plaintiffs note that four of the five agreements do not allocate any damages obtained in infringement suits. They contend that this right is part and parcel of plaintiff's sale price for the patent, arguing that these awards can be retained by a transferor-patentee as consideration of the sales price. In *Graham v. Commissioner,* 26 T.C. 730 (1956), the court allowed such awards to be part of the contract price where the patent contract expressly provided. Here, there is no express provision on which plaintiffs could base their argument.

### 3. The right to create an unlimited number of additional interests

None of the agreements restricts plaintiff's right to assign further interests, so that he can sell additional shares. From this defendant takes the position that plaintiff can sell shares in additional one-percent undivided interests beyond 100 percent and that he can also sell one-half percent undivided interests or even one-millionth percent undivided interests. Defendant concludes that plaintiff's retention of this substantial right deprives the transferee of the right to exclude others from use of the patent.

The Tenth Circuit in *Eickmeyer I* said that a transferor-patentee cannot retain the power to create additional interests of "elastic proportions." *Eickmeyer I*, 580 F.2d at 399–400 (citing *Walen v. United States*, 273 F.2d 599, 602 n. 3 (1st Cir.1959) (dictum)). Some of the agreements in *Eickmeyer I* reflected no percentage interest. This court's earlier order distinguished the agreements in the case at bar because the interests were all denominated one percent. Even if defendant is correct

that plaintiff's failure to specify any interest in other agreements enhances the potential elasticity of the interests that he could convey, those agreements are not among the five in this lawsuit. Each of the five agreements in the case at bar specifies a unit of an undivided interest, and Ellis supports the proposition that the undivided interest may be of a one-thousandth part. Ellis § 394.

### 4. The right to collect for all uses of a patent

In all five agreements, the transferee can assign or sublicense its rights to a third-party purchaser so long as the latter takes an ownership interest subject to the obligations to plaintiff of the transferee.* Because payments for sale are dependent on the productivity of the patent, plaintiffs contend that this restriction is necessary to protect future contingent payments. Defendant asserts that this restriction makes all third-party purchasers of licenses or of subassignments impermissibly accountable to plaintiff.

| Design Capacity CO$_2$ plus H$_2$S Removed | |
| --- | --- |
| Short Tons per Stream Day | Purchase Price |
| 100 and under | $ 18,000 |
| 200 | 28,000 |
| 400 | 42,000 |
| 800 | 64,000 |
| 1,600 | 96,000 |
| 3,200 | 144,000 |
| Over 3,200 | $45. per ton/day |

In case of natural gas purification, $200/MMSCFD of feed gas shall be added to the above price.

The amount for each Catacarb Plant having a design capacity between 100 and 3,200 short tons per stream day and whose design capacity is not specifically stated in the above schedule shall be determined by straight line interpolation between prices given for schedule stated design capacity immediately above and below the design capacity for the particular Catacarb Plant. The amount for the expansion of an existing Catacarb Plant shall be the difference between the amount for the capacity of the expanded plant and the amount for the plant before expansion, using the above schedule.

Articles XIV and VII, respectively, of the agreement with Chiyoda are to the same effect,

---

* Article XIV of the agreement with UBE provides in full:

14.01 This Agreement may be assigned by UBE to any third party as part of the transfer by UBE of that part of UBE's business to which this Agreement pertains, provided that said assignee assumes the obligations undertaken by UBE hereunder.

14.02 The rights granted UBE under this Agreement may be extended by UBE to an UBE Affiliate, provided that said Affiliate agrees to assume all the obligations hereunder.

14.03 Nothing contained in Section 14.01 and 14.02 shall be interpreted to limit the right of UBE to transfer interests in Patent Rights as it may determine.

Article VII, to which art. XIV refers, provides in full:

7.01 In Consideration of the sale mentioned in Article V, and during the life of this Agreement, UBE shall pay and account to EICKMEYER the purchase price at the time or times mentioned in Section 7.03 for each Catacarb Plant designed and/or built and/or expanded by or for Purchasers:

Plaintiffs' position is that plaintiff did not set up an accounting mechanism; rather, each agreement provides for a sales price to be paid dependent upon use of the Catacarb process. The amount fluctuates with the size of the plant designed, built, or modified. If a transferee assigns his interest, the amount owed plaintiff from the transferee would be ascertainable only when the third party made use of the process.

*Eickmeyer I* ruled that the requirement to account was inconsistent with a transfer of an interest in all substantial ownership rights. The agreements in this case more expressly retain the right to collect for all uses of the patent. The parties were asked to brief whether retention of this right defeats the transfer of sufficient ownership rights. Plaintiffs have submitted two additional briefs. They do not defeat the logic or reasoning of *Eickmeyer I* on this issue. Each of the five agreements establishes a sales price ascertainable only on the basis of future use of the process by the transferee or subtransferee, thereby depriving the transferee of the right to subassign or license at whatever rate the transferee deems the market will bear.

### CONCLUSION

 By allowing UBE to retain the full award from any patent infringement suit that it might prosecute, the agreement with UBE is inconsistent with a transfer of a co-ownership interest in a patent. By retaining the right to collect for all uses of the patent, all of the five agreements failed to transfer a substantial ownership interest and therefore constitute licenses.

Based on the foregoing, defendant's cross-motion for summary judgment is granted, and plaintiffs' motion for summary judgment is denied. The Clerk of the Court will dismiss the complaint.

IT IS SO ORDERED.

as are articles XIV and V of that with Boston Gas Co., articles VI and XIV of that with Sing-

apore, and articles VII and XIV of that with Integral Engineering.